**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

SYLVIA LARSON et al.,

        Plaintiffs,

v.                                  CIVIL ACTION NO. 2:09-cv-01331

ACTAVIS INC., et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending is Plaintiffs' motion to remand [Dckt. 7]. For the reasons that follow, I **DENY** the motion.

I.

On March 10, 2009, the Larsons instituted this civil action in the Sixteenth Judicial District Court in the Parish of Iberia, Louisiana. Ms. Larson alleges that she required hospitalization after suffering from nausea, diarrhea, inability to eat and weakness after ingesting Digitek® prescribed for a heart problem. She was diagnosed with dehydration, nausea and diarrhea "due to digoxin toxicity" during her hospitalization. (Compl. ¶ 7). Ms. Larson later learned the Digitek® she had taken was subject to a recall because the tablets were possibly twice the appropriate thickness, and twice the dose, as reflected on the label. Ms. Larson seeks damages for (1) past, present and future pain and suffering, (2) past, present and future mental anguish and anxiety, (3) past, present and future medical bills and expenses, (4) past, present and future loss of wages and earning capacity, and (5) loss of enjoyment of life, "including any and all disability, and other hedonic damages past,

present and future...." (*Id.* ¶ 13.).  Mr. Larson seeks recovery for loss of consortium, services and society and for the grief and mental anguish he suffered as a result of Ms. Larson's illness.  The last allegation of the Larsons' complaint states "[p]laintiffs submit that their damages, exclusive of interest and costs, do not exceed $75,000.00." (*Id.* ¶ 16; Pls.' Memo. in Supp. at 3 (observing also that "...plaintiffs' specifically plead that their damages do not exceed $75,000.00.")).  The Larsons have filed a sworn affidavit with their complaint stating that "[t]he amount in controversy of each petitioner's individual cause of action does not exceed $75,000.00, exclusive of interest and costs." (Certification at 1).[1]

On June 30, 2009, Defendants removed to the United States District Court for the Western District of Louisiana.[2]  Defendants allege as follows:

> ...after commencement of this suit, and in order to comply with FDA reporting requirements, Defendants collected over 300 pages of medical records and bills pertaining to Mrs. Larson's allegations. These records reveal that Mrs. Larson's injuries are more significant than that claimed in the Petition for Damages. Specifically, Mrs. Larson's medical records demonstrate that she began suffering significant gastrointestinal complications for months prior to her hospitalization. Mrs. Larson's records show that she claims to have lost 7 pounds in the two weeks prior to her hospitalization, due to nausea and diarrhea. Mrs. Larson was allegedly bedridden for a five week period due to alleged complications of digoxin toxicity. On April 9, 2008, two weeks following her discharge from the hospital, Mrs. Larson

---

[1] Plaintiffs appear to have carefully structured their certification so as to provide that their claims, taken separately, do not satisfy the jurisdictional minimum.  In doing so, they strongly infer that their claims, in the aggregate, meet the amount in controversy requirement.

[2] The Judicial Panel on Multidistrict Litigation was contemporaneously notified of the suit for tag-along transfer to MDL 1968 through issuance of a conditional transfer order.  After issuance of the proposed transfer order, the plaintiffs filed a notice of opposition and asked the Panel to vacate its order.  After considering all of the arguments of counsel, the Panel found that this action involved common questions of fact with actions previously transferred to MDL 1968 and upheld the transfer as appropriate and proper.  Despite being previously briefed and set for oral argument in the Western District of Louisiana, the motion for remand to state court was still pending when the final transfer order was issued by the Panel on December 2, 2009.

>  reported that her symptoms had been occurring for a period of three to four months
>  and were continuing without abatement at that time. Although these records do not
>  indicate whether Mrs. Larson's complications continue or have resulted in permanent
>  sequelae, in her Petition for Damages she prays for recovery of future damages,
>  expenses and lost wages. And Mrs. Larson's medical bills from her hospital
>  admission ...until her abdominal CT scan ...are in excess of $11,000.00.

(Not. of Remov. ¶ 8). On July 17, 2009, the Larsons moved to remand. They contend the amount in controversy is not satisfied. The basis for remand is stated as follows:

>  These damages, as alleged by plaintiffs in their petition for damages, do not facially
>  show that the amount in controversy exceeds $75,000.00. Plaintiff has merely plead
>  general categories of damages. . . .
>
>  [i]t can be assumed that defendants are relying on plaintiff's medical records to prove
>  the minimum jurisdictional amount of $75, 000.00. These medical records do not
>  make it "unequivocally clear and certain" that more than $75,000.00 is in
>  controversy.
>
>  Alternatively, if the complaint is "facially apparent" that the claim exceeds the
>  jurisdictional amount, then defendants' Notice of Removal was untimely and this
>  case should be remanded accordingly.

(Mem. in Suppt. at 3-5).[3] The parties are in agreement that they are diverse from one another.

Prior to the remand motion the Defendants had sought a stay of the proceedings pending transfer. In the alternative, however, they asserted that the jurisdictional amount was met, relying essentially upon their allegation in the notice of removal that I reproduced above. The Honorable

---

[3] Plaintiffs assert that removal was untimely. They claim the defendants failed to remove within thirty days of being served with the complaint, as required by 28 U.S.C. § 1446(b). Section 1446(b) further provides, however, that removal is timely if it occurs "within thirty days after receipt by the defendant . . of a copy of . . . [some] other paper from which it may first be ascertained that the case is one which is or has become removable." *Id.* The initial pleading did not affirmatively disclose satisfaction of the amount-in-controversy requirement. On June 1, 2009, however, the defendants received medical records suggesting otherwise. Additionally, on June 24, 2009, the defendants received notice from the plaintiffs of their refusal to, among other things, stipulate to a provision that the damages sought would not exceed $75,000. On June 30, 2009, within 30 days of receiving the medical records and notice of the plaintiffs' refusal to stipulate, the defendants removed. Based upon this sequence of events, I deem the removal timely under section 1446(b).

C. Michael Hill, United States Magistrate Judge, deferred ruling on the remand motion and granted Defendants' motion to stay. The case was transferred to this District on December 11, 2009.

## II.

The leading commentators on federal practice have concisely set forth the choice-of-law rules applicable in the transferee court assigned a multidistrict litigation action:

> It appears to be reasonably well established, given the plethora of cases on the point, that in actions in which a federal court would be guided or governed by state law, the transferee court is bound to apply the law that the transferor court would follow; this issue most commonly arises in diversity of citizenship cases or with regard to issues in federal question cases controlled by state law. However, in cases involving federal questions, the transferee court follows the interpretation of federal law that has been established by its own court of appeals, although this principle, as some of the citations in the note below indicate, does not have universal acceptance. As a general proposition, however, the application of federal law, as defined by the transferee court's circuit has the advantage of producing a single governing law rather than multiple constructions of federal law that might exist in the different circuits of the several transferor courts.

15 Charles A. Wright *et al.*, *Federal Practice and Procedure,* § 3866 (3rd ed. 2009) (footnotes omitted). The law in this Circuit is in accordance with the observations of Professor Wright and his colleagues.. *See*, *e.g.*, *Bradley v. United States*, 161 F.3d 777, 782 n.4 (4th Cir. 1998).

Specific to MDL cases, and subject matter jurisdiction generally, the Honorable Shira A. Scheindlin recently observed that the law of the transferee circuit applies:

> [C]ourts have held that the law of the transferee circuit controls pretrial issues such as whether the court has subject matter or personal jurisdiction over the action, or whether the cases should be remanded to state court because the cases were not properly removed.

*In re Methyl Tertiary Butyl Ether (MTBE) Products Liability Litigation*, 241 F.R.D. 435, 439 (S.D.N.Y. 2007) (footnote omitted). Judge Scheindlin's observation, as noted in her opinion, reflects the general approach. *See*, *e.g.*, *In re Linerboard Antitrust Litig.*, No. 04 Civ. 4001, MDL 1261, 2005 WL 1625040 (E.D.Pa. July 11, 2005) (applying the law of the Third Circuit on a motion to dismiss for lack of subject matter jurisdiction); *In re MTBE Prods. Liab. Litig.*, 2005 WL 106936, at *5 (S.D.N.Y. 2005) (applying the law of the Second Circuit on a motion to dismiss for lack of personal jurisdiction); *In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.*, 256 F. Supp.2d 884 (S.D. Ind. 2003) (applying the law of the Seventh Circuit on a motion for remand to state court). As one might expect, the same rule appears to apply to amount-in-controversy determinations. *See*, *e.g.*, 32A Am. Jur. 2d *Federal Courts* § 1520 (2007) ("[B]ecause whether the relief sought exceeds the statutory minimum necessary for diversity jurisdiction is a question of federal law, the law of the circuit where the transferee court sits governs the determination of that question.").

Nevertheless, I need not now definitively resolve this choice-of-law issue. The law governing whether the amount-in-controversy is satisfied is essentially the same in both this District and the Western District of Louisiana. *Compare Sayre v. Potts*, 32 F. Supp.2d 881, 883-84 (S.D. W. Va.1999), *with Manguno v. Prudential Property and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).

An action may be removed from state court to federal court if it is one over which the district court would have had original jurisdiction. 28 U.S.C. § 1441(a). Courts construe removal jurisdiction strictly because of the significant federalism concerns removal implicates. *Maryland Stadium Auth. v. Ellerbe Becket, Inc.*, 407 F.3d 255, 260 (4th Cir.2005). "If federal jurisdiction is doubtful, a remand is necessary." *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th

Cir.1994). The burden of establishing federal jurisdiction is on the party seeking removal. *Id.* Accordingly, when federal jurisdiction is based on diversity under 28 U.S.C. § 1332, the defendant bears the burden of proving that the suit is between citizens of different states and that the amount in controversy exceeds the jurisdictional amount of $75,000. *See Sayre*, 32 F. Supp.2d at 883-84.

Where the original complaint does not state a specific damages amount, the defendant must prove by a preponderance of the evidence, *i.e.*, that it is more likely than not, that the amount in controversy exceeds $75,000. *Sayre*, 32 F. Supp.2d at 886. "To satisfy this burden, a defendant must offer more than a bare allegation that the amount in controversy exceeds $75,000." *Id.* Rather, the defendant must supply some evidence to support his claim regarding the amount in controversy. *Id.*; *see also Manguno*, 276 F.3d at 723 ("Th[e proof] requirement is met if (1) it is apparent from the face of the petition that the claims are likely to exceed $75,000, or, alternatively, (2) the defendant sets forth 'summary judgment type evidence' of facts in controversy that support a finding of the requisite amount.").

In addressing the propriety of removal, courts look to "the record existing at the time the petition for removal was filed." *Id.* (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 291 (1938)). "Specifically, the amount in controversy is determined by considering the judgment that would be entered if the plaintiff prevailed on the merits of his case as it stands at the time of removal." *Id.* A court can consider, for example, the type and extent of the plaintiff's injuries set forth in the complaint and the possible damages recoverable. *Sayre*, 288 F. Supp.2d at 886. Importantly, "in reaching a conclusion with regard to the amount in controversy based upon this evidence, the court 'is not required to leave its common sense behind.' " *Id.* at 886-87 (quoting *Mullins v. Harry's Mobile Homes Inc.*, 861 F. Supp. 22, 24 (S.D. W. Va.1994)).

III.

While the Larsons stress in their remand motion that their damages do not exceed $75,000 and that their failure to stipulate to such a fact does not defeat a motion to remand, I must view the record as a whole at the time of removal. That record does not specifically allege the sum of the damages; however, it is facially apparent that the amount in controversy is likely to exceed $75,000. The court notes that Ms. Larson was forced to undergo hospitalization for four days after she began to suffer gastrointestinal symptoms causing dramatic and rapid weight loss and this resulted in excess of $11,000 in past medical bills alone. This is in addition to medical records demonstrating significant gastrointestinal complications months prior to her hospitalization and five weeks of being bedridden due to alleged complications from digoxin toxicity and the associated petitions for future medical expenses, past and future loss of wages, physical and mental pain and suffering, loss of earning capacity, and loss of enjoyment in the quality of life, "including any and all disability" which are unspecified. The court also notes the petition from Mr. Larson for loss of consortium as a result of the injuries to his wife. The damages claim, which is again unspecified, includes damages for grief, mental anguish and loss of consortium and companionship which he sustained and "will continue to sustain as a result of the injuries to his wife". These allegations illustrate that it is more likely than not the amount in controversy exceeds $75,000.

Accordingly, having concluded that the amount in controversy requirement is satisfied, the exercise of federal subject matter jurisdiction is appropriate. I **DENY** the Larsons' motion to remand.

The Clerk is directed to send copies of this order to counsel of record and any unrepresented party.

        ENTER:        February 18, 2010

*Joseph R. Goodwin, Chief Judge*

.